IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IDEX Corp., Eastern Plastics, Inc., Pulsafeeder, Inc., and Felice DiMascio, § § § § Plaintiffs, Counter-Defendants, § § v. § § Dripping Wet Water, Inc., Allison H. § Sampson, and Richard L. Sampson, § § Defendants, Counter-Plaintiffs. § | Case No. 1:08-cv-1114 District Judge Milton I. Shadur Document Filed Electronically |

## PLAINTIFFS' BRIEF ON CLAIM PRECLUSION

Pursuant to this Court's instructions (*see* Dkt. No. 25), Plaintiffs ("IDEX")[1] respectfully submit this brief explaining why a prior settlement agreement and resulting dismissal with prejudice of litigation between the parties in the District of Connecticut bars the current counterclaims of Defendants ("DWW")[2] under the doctrine of claim preclusion.

The underlying factual allegations in this case stem from DWW's contention that employees of IDEX subsidiaries observed and claimed as their own chlorine dioxide technology allegedly invented by DWW. DWW presently seeks correction of inventorship for patents and patent applications on which Plaintiff Felice DiMascio is a named inventor, as well as relief for related claims of unjust enrichment, and fraud and intentional concealment.

---

[1] For ease of reference considering the parties' litigation history, this brief will refer to Plaintiffs IDEX Corporation; Eastern Plastics, Inc.; Pulsafeeder, Inc.; and Felice DiMascio, collectively, as "IDEX."

[2] As with Plaintiffs, this brief will refer to Defendants Dripping Wet Water, Inc. and Allison and Richard Sampson, collectively, as "DWW."

The parties already litigated a case in the District of Connecticut based on these same underlying facts.[3] Indeed, many of the core factual allegations of DWW's present counterclaims are exactly the same as those that supported its prior claims in the Connecticut litigation. After litigating the issues, the parties settled the Connecticut case, following which the Connecticut court dismissed the case with prejudice. Although the parties' final settlement agreement did contain a narrow reservation of rights for the parties to pursue either patent interference or patent infringement proceedings in the future, the current claims brought by DWW do not fall within either of these specific exceptions to the dismissal with prejudice. Thus, the prior settlement and corresponding dismissal with prejudice preclude DWW's current counterclaims.

The doctrine of claim preclusion bars a party from re-litigating a claim if (1) the parties are identical or in privity, (2) the claims or causes of action arise from the same core of operative facts, and (3) the prior action concluded with a final judgment on the merits. All three elements are met here. *First*, DWW, the Sampsons, IDEX, and Pulsafeeder were all named parties in the Connecticut litigation, and both Eastern Plastics and Mr. DiMascio are in privity with Halox Technologies, another named party in the Connecticut case. *Second*, both the Connecticut litigation and this case involved the same nucleus of operative facts, namely the alleged theft of chlorine dioxide technology by employees of IDEX subsidiaries. *Third*, the Connecticut court resolved the case with a final judgment on the merits via a dismissal with prejudice, which the court issued following the parties execution of a settlement agreement. As a result, the principles of claim preclusion require this Court to dismiss DWW's counterclaims with prejudice.

---

[3] As explained herein, Defendants Eastern Plastics and Felice DiMascio were not parties to the prior litigation but rather are in privity with the named parties.

2

I.    **Statement of Undisputed Facts.**

1.  IDEX filed this action for declaratory judgment against DWW on February 22, 2008. (Dkt. No. 1.)  Pursuant to this Court's order (Dkt. No. 11), IDEX amended its complaint on March 7, 2008.  (Dkt. No. 16.)  Despite providing IDEX a courtesy copy of its answer and counterclaims on May 5, 2008, DWW has yet to file this pleading with this Court.[4]

2.  IDEX initiated this lawsuit in response to a case DWW filed against it in the Western District of Texas, styled *Dripping Wet Water, Inc., et al. v. IDEX Corp.*, Case No. 5:07-cv-531 (W.D. Tex.).  DWW pled the identical four causes of action that it now asserts in its counterclaims, plus a fifth count for unfair competition.  Ex. B, at 14–21.  IDEX filed a motion to dismiss in the Western District of Texas case, which Judge Rodriguez granted for lack of personal jurisdiction.  Ex. C.

3.  The latest Western District of Texas case was not DWW's first attempt to sue IDEX on many of the same facts set forth in DWW's current counterclaims.  DWW previously sued IDEX in the Western District of Texas in 2003, but the case was quickly transferred to the District of Connecticut.  This earlier case proceeded in the District of Connecticut as *Halox Techs., Inc. v. Dripping Wet Water, Inc. et al.*, Case No. 3:03-cv-1008 (D. Conn.), and DWW's claims from the original Texas complaint ultimately became counterclaims in the Connecticut litigation.  Ex. D.  These counterclaims were based on substantially the same operative facts as DWW's current claims.

---

[4] Attached hereto as Exhibit A is the courtesy copy DWW provided to IDEX.  DWW's failure to file an answer to IDEX's complaint, even after IDEX granted DWW an extension of time that has since lapsed, may provide an alternative ground to dismiss DWW's counterclaims.  For the purposes of this brief, however, IDEX will assume that this courtesy copy embodies DWW's answer and counterclaims.

**4.** There is substantial overlap between the allegations of the prior Connecticut litigation and those forming the basis for DWW's counterclaims in this case. For example, both cases involve:

- the technology of water disinfection equipment, specifically chlorine dioxide generators. *Id.* ¶¶ 11, 18; Ex. A, ¶¶ 15–17, 30–34.

- allegations that the Sampsons had a display booth at the Association of Water Technologies ("AWT") tradeshow in Dallas, TX on or about October 9–13, 2001 and that IDEX visited its booth and collected literature that clearly explained DWW's chlorine dioxide generator technology. Ex. D, ¶¶ 20–21; Ex. A, ¶¶ 35–36.

- allegations that, in March 2002, IDEX acquired what would become Halox Technologies, Inc., a company founded and formerly owned by the Sampsons to manufacture and sell water disinfection equipment. Ex. D, ¶¶ 10–15; Ex. A, ¶¶ 37–38.

- allegations that DWW had a display booth at the AWT tradeshow in Orlando, FL on or about September 18–21, 2002 and that employees of Pulsafeeder and/or IDEX visited DWW's booth. Ex. D, ¶¶ 23–24; Ex. A, ¶ 43.

- allegations that employees of IDEX and/or Pulsafeeder, namely Paul Beldham and Steve Ebersohl, visited DWW's booth, inquired whether DWW would consider a business arrangement, and asked the Sampsons to explain DWW's product in more detail, which they allegedly did. Ex. D, ¶ 25; Ex. A, ¶ 43.

- allegations that, after the Orlando tradeshow, Mr. DiMascio filed a patent application claiming the Sampsons' invention as his own. Ex. D, ¶ 46; Ex. A, ¶¶ 19, 21, 44, 49. This is the same patent for which DWW now seeks correction of inventorship.

- allegations that Mr. Beldham then arranged for Mr. DiMascio to visit the Sampsons and DWW "as a prelude to a possible business arrangement." Ex. D, ¶¶ 26–28; Ex. A, ¶¶ 45–46.

- allegations that Mr. DiMascio visited the Sampsons in December 2002 at which time the Sampsons and DWW demonstrated and explained their technology in detail. Ex. D, ¶¶ 30–33; Ex. A, ¶ 47.

**5.** The parties resolved the Connecticut litigation by entering into a settlement agreement on May 26, 2006, which provided for dismissal of the claims and counterclaims of the parties ***with prejudice***. Ex. E. The only limitation in the settlement agreement was the parties'

reservation of "any and all rights . . . to claims and defenses related to *patent interference proceedings* and any alleged *patent infringement*." *Id.* ¶ 5 (emphasis added).[5]

**6.**   The Connecticut court entered the stipulation of dismissal on June 16, 2006, *see* Ex. F, and the court entered an order accordingly on July 6, 2006. *See Halox Techs., Inc. v. Dripping Wet Water, Inc. et al.*, Case No. 3:03-cv-1008 (D. Conn.) (Dkt. No. 79).

**7.**   DWW now alleges many of the same factual allegations that it did before: that IDEX obtained detailed disclosures of DWW's technology and business plans under false pretenses, copied that technology, and subsequently claimed sole inventorship and exclusive rights to that technology. *Compare, e.g.*, Ex. A, ¶¶ 43–44, 47 *with* Ex. D, ¶¶ 23–25, 46; *see also* Ex. G for a chart illustrating the factual overlap between the two cases. It now asserts four causes of actions based on these facts: (1) correction of inventorship pursuant to 35 U.S.C. § 256, (2) declaratory judgment of ownership interest in the DiMascio patents and/or right to use patents, (3) unjust enrichment, and (4) fraud and intentional concealment.

## II.   Federal Claim Preclusion Law Applies.

Federal claim preclusion law, as interpreted by the Seventh Circuit, applies. The United States District Court for the District of Connecticut -- *i.e.*, the rendering court -- had federal question jurisdiction.[6] Ex. D, ¶ 7. Therefore, this Court applies federal claim preclusion law to decide the preclusive effect of that settlement and dismissal. *See Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007) ("The federal law of claim preclusion applies here because the earlier judgment was rendered by a federal court."); *Hudson v. Hedge*,

---

[5] As explained herein, this reservation of rights is not applicable here because DWW has neither attempted to provoke an interference proceeding nor alleged any patent infringement.

[6] DWW had asserted, *inter alia*, a claim under the Lanham Act, 15 U.S.C. § 1125(a). Ex. D, at 9.

27 F.3d 274, 276 (7th Cir. 1994) (Easterbrook, J.) (applying federal claim preclusion law).  And because "[f]ederal courts seem content to apply a single 'accepted formulation of res judicata for federal court use,'" this Court looks to Seventh Circuit application of the federal claim preclusion test.  *Zip Dee, Inc. v. Dometic Corp.*, 886 F. Supp. 1427, 1431 n.5 (N.D. Ill. 1995) (Shadur, J.).

### III.   Federal Claim Preclusion Law Bars DWW's Counterclaims.

The doctrine of claim preclusion bars DWW's current counterclaims in light of the parties' prior settlement agreement and resulting dismissal with prejudice of the prior Connecticut litigation.  Claim preclusion jurisprudence requires: "(1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits."  *E.g., Cole v. Bd. of Trs. of the Univ. of Ill.*, 497 F.3d 770, 772 (7th Cir. 2007) (quoting *Highway J Citizens Group v. U.S. Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006)) (affirming dismissal on claim preclusion grounds).

#### A.   Parties to Both Litigations Are Identical or in Privity.

Both parties in this litigation are identical or in privity for purposes of claim preclusion.  Defendants DWW and the Sampsons were defendants and counter-plaintiffs in the previous suit, while Plaintiffs Pulsafeeder and IDEX were counter-defendants.  The only "new" parties in the present litigation are Plaintiffs Felice DiMascio and Eastern Plastics; however, both of them are in privity with Halox Technologies, Inc., a plaintiff and counter-defendant in the Connecticut litigation.

Seventh Circuit law considers two entities to be in privity "if their interests are closely related."  *Tartt v. Nw. Comty. Hosp.*, 453 F.3d 817, 822 (7th Cir. 2006).  Formal successor interests, such as that of a successor corporation, establishes privity.  *Cf. Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 973 (7th Cir. 1998).  And the Seventh Circuit recognizes privity in the

context of employer-employee or principle-agent relationships. *Lambert v. Conrad*, 536 F.2d 1183, 1186 (7th Cir. 1976); *see also Horwitz v. Alloy Auto. Co.*, 992 F.2d 100, 103–104 (7th Cir. 1993); *Zurich Capital Mkts. Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1049 & n.5 (N.D. Ill. 2005) (citing *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n.6 (7th Cir. 1986); *Janusz v. Fasco Indus., Inc.*, No. 97 C 7976, 1999 WL 162793, at *5 (N.D. Ill. Mar. 12, 1999) ("The Seventh Circuit has found that for res judicata purposes, a corporation, its officers, directors, and employees, are privies.")).

Eastern Plastics and Mr. DiMascio are in privity with prior party Halox. Eastern Plastics is in privity with Halox because Halox merged with and into Eastern Plastics on July 28, 2006, making Eastern Plastics the successor corporation to Halox. *See* Ex. H. Similarly, Mr. DiMascio is in privity with Halox because he was not only acting as an employee of Halox at all relevant times (when Halox existed), but also was central to DWW's factual allegations in the prior case. *See* Ex. D. Furthermore, the settlement agreement expressly contemplated that the agreement would inure to the benefit of, *inter alia*, the parties' employees. Ex. E, ¶ 8. Hence, DWW cannot dispute that privity exists between Halox and both Eastern Plastics and Mr. DiMascio. Furthermore, and as an alternative basis, DWW admitted in its Connecticut counterclaims that Mr. DiMascio and Halox acted as agents of IDEX and Pulsafeeder. Ex. D, ¶ 28.

Accordingly, the parties to both lawsuits are either identical or in privity so as to justify this Court applying claim preclusion. Moreover, because the non-parties at issue from the prior case are the ones advancing (rather than opposing) the claim preclusion argument, any fairness concerns about binding a non-party are inapplicable.

### B.  Both Actions Involved Identical Claims or Causes of Action.

DWW's current counterclaims and the prior Connecticut litigation both derive from the same core set of operative facts. In defining a "cause of action" for claim preclusion purposes, the Seventh Circuit has adopted the transactional test, wherein the inquiry focuses on whether the two cases under consideration "are based on the same, or nearly the same, factual allegations" or are "from the same incident, events, transaction, circumstances, or other factual nebula." *Cole*, 497 F.3d at 772–73 (citations omitted). Accordingly, the doctrine of claim preclusion bars not only those claims that were brought in the previous litigation, but also those claims that ***could have been brought*** based on the same core of operative facts. *Id.* at 773; *see also Direct Marketing Concepts, Inc. v. Trudeau*, No. 02 C 9014, 2003 WL 21018659 (N.D. Ill. Apr. 30, 2003) (Shadur, J.).

Here, DWW's counterclaims add little to the factual background of the previous Connecticut litigation, which alleged that IDEX obtained detailed disclosures of DWW's technology and business plans under false pretenses, copied that technology, and subsequently claimed sole inventorship and exclusive rights to that technology. For example, DWW has alleged the following in both the prior litigation and the instant case:

- IDEX attended AWT tradeshows in Dallas and Orlando, where it allegedly learned about DWW's technology (Ex. D, ¶¶ 20–25; Ex. A, ¶¶ 35–36, 43);

- After the second AWT tradeshow, Mr. DiMascio allegedly copied the Sampsons' work; filed U.S. Patent Application No. 10/065,259, allegedly based on what he had learned from his exposure to DWW's technology; and claimed sole inventorship (Ex. B, ¶ 46; Ex. A, ¶¶ 19, 21, 44, 49); and

- Mr. DiMascio visited DWW's facility, at which time the Sampsons and DWW demonstrated and explained their technology in detail. (Ex. B, ¶¶ 26–28, 30–33; Ex. A, ¶¶ 45–47).

Indeed, the single patent -- U.S. Patent No. 6,913,741 -- for which DWW specifically seeks correction in (Exhibit 1 of) its counterclaims derives from the patent application that is discussed

8

at paragraph 46 of the prior Connecticut counterclaims. Thus, on their face, these two litigations involve the same causes of action for purposes of claim preclusion.

Moreover, although DWW's current counterclaims are substantially the same as the claims asserted in its complaint from the recently-dismissed Western District of Texas case, its current counterclaims are different in two ways. First, although DWW repeats its factual bases verbatim, it has dropped its claim for unfair competition from the counterclaims in this case. Not surprisingly, DWW pled an unfair competition claim in the prior Connecticut case. *Compare* Ex. A *with* Ex. B, at 20. Second, DWW deletes key admissions made in the Texas complaint. In its Texas complaint, DWW admitted that its causes of action for unjust enrichment, fraud and intentional concealment, and unfair competition "ar[ose] from the same transactions and from a common nucleus of operative facts" as its cause of action for ownership. Ex. B, at 17–20. In other words, DWW admitted that its causes of action in Texas, which included all of its counterclaims in this case, all arose from the same core of operative facts.

These cosmetic changes to DWW's pleadings demonstrate DWW's tacit recognition that claim preclusion applies. DWW admitted in the recent Texas complaint that all of its causes of action arose from the same transactions and from a common nucleus of operative facts. Thus, if claim preclusion applies to one of these causes of action, it should apply to all of them (assuming DWW's pleading in Texas complied with Rule 11). DWW's pleading of unfair competition both in the prior Connecticut litigation and in the Texas litigation, based on substantially the same set of core facts, was undeniably subject to claim preclusion. Indeed, DWW's sudden elimination of its unfair competition claim in this case is indicative, if not tantamount to an admission, that it is precluded. And given that DWW's unfair competition claim is undeniably precluded, and because DWW admits its current counterclaims "arose from the same transactions and from a

common nucleus of operative facts" as its unfair competition claim, DWW's current counterclaims must all be precluded as well. Claim preclusion does not turn on the labels a party assigns to its causes of action, and any attempt by DWW to argue otherwise should be rejected.

### C. The Previous Action Concluded with a Final Judgment on the Merits.

The settlement agreement, under which the parties stipulated to dismissal with prejudice, constituted a final judgment on the merits. *Golden v. Barenborg*, 53 F.3d 866, 871 (7th Cir. 1995) (concluding that a prior dismissal with prejudice based on a stipulation by the parties constituted a final judgment on the merits); *Junction Solutions, LLC v. MBS DEV, Inc.*, No. 06 C 1632, 2007 WL 4233995, at *4 (N.D. Ill. Nov. 21, 2007) ("It is well settled that a dismissal with prejudice upon stipulation of the parties is treated as a final judgment on the merits for purposes of claim preclusion."). Consequently, DWW signed away its rights to re-litigate any claims arising out of the facts alleged in that litigation, and the settlement agreement operates as a final disposition on the merits.

### IV. The Narrow Reservation of Rights Provision in the Settlement Agreement Does Not Apply.

Lastly, this Court should reject any argument by DWW that its current counterclaims fall under the specification reservation of rights provision in the prior settlement agreement. The current counterclaims cannot be fairly characterized as "patent interference proceedings" or related to any alleged "patent infringement." *See* Ex. E, ¶ 5. The settlement agreement established the narrow and specific forms that any future litigation could take, and DWW's counterclaims do not take either of those forms.

Correction of inventorship is a wholly different cause of action from a patent interference proceeding. The two actions are governed by different statutes -- § 135 of the Patent Act addresses patent interference proceedings, while § 256 provides a mechanism for correcting

10

inventorship. *See* 35 U.S.C. §§ 135, 256 (2006). Interference proceedings determine priority between two patent applications (or an application and recently issued patent), whereas correction of inventorship pertains to the inventorship of a particular issued patent. Moreover, patent interference proceedings occur in the first instance at the U.S. Patent Office, and only through yet another statutory section can they be appealed to a district court. *See id.* § 146. The settlement agreement explicitly carves out an unqualified reservation of rights pertaining to interference proceedings, but says nothing about inventorship or correction of inventorship.

The concept of patent infringement is similarly quite different from correction of inventorship. Patent infringement deals with a lawsuit alleging unauthorized practice of a patented invention. No allegations of patent infringement have been made in this case, and none of DWW's counterclaims, including its counterclaim for correction of inventorship, are even remotely related to any allegation of patent infringement.

The parties reserved rights for interference proceedings and patent infringement -- not correction of inventorship or any of the other causes of action in DWW's counterclaims. If DWW had wanted to challenge Mr. DiMascio's rights to a patent on the technology discussed in the prior Connecticut complaint, it should have provoked an interference proceeding to accomplish this.[7] DWW cannot now ignore the impact of the prior dismissal with prejudice, and the language of the reservation of rights, to bring claims that it gave up through the prior

---

[7] The explicit reference to "patent interference proceedings" reflected the fact that, at the time the settlement agreement was signed in June 2006, DWW was in a position to seek an interference between the DiMascio patent identified in Ex. 1 to DWW's counterclaims (U.S. Patent No. 6,913,741) and DWW's patent application that matured into the patent attached as Ex. 2 to DWW's counterclaims, both of which were specifically called out in the prior litigation. If DWW wanted to contest inventorship of the DiMascio patent, the settlement agreement established that an interference proceeding was the required procedure. The time for provoking an interference has since lapsed, however, thus leading to DWW's back-door effort to improperly assert its present counterclaims.

settlement. The counterclaims alleged by DWW do not fall within the exceptions carved out of the settlement agreement, and thus claim preclusion necessitates dismissal of all of DWW's claims.

**V.  Conclusion.**

For these reasons, the prior settlement agreement and corresponding dismissal with prejudice in the District of Connecticut bars DWW's current counterclaims under the doctrine of claim preclusion.[8]

Dated: May 27, 2008

Respectfully submitted,

/s/ Marcus E. Sernel
David K. Callahan, P.C. (6206671)
Marcus E. Sernel (6243853)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
Telephone:  (312) 861-2000
Facsimile:  (312) 861-2200

ATTORNEYS FOR PLAINTIFFS

---

[8] As an aside, DWW's request to add the Sampsons as inventors on *pending* patent applications is patently defective and should be dismissed in any event. *See Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1356–57 n.1 (Fed. Cir. 2004) (explaining that § 256 "plainly does not create a cause of action in the district courts to modify inventorship on pending patent applications").

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that on this 27th day of May, 2008, I am electronically filing the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Frank Frisenda
Frisenda, Quinton & Nicholson
11601 Wilshire Blvd., Suite 500
Los Angeles, CA  90025

                /s/ Marcus E. Sernel
                ATTORNEY FOR PLAINTIFFS