# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

IDEX CORP., EASTERN PLASTICS, INC.,
PULSAFEEDER, INC., AND
FELICE DIMASCIO,

    **Plaintiffs,**

    vs.

DRIPPING WET WATER, INC.,
ALLISON H. SAMPSON, and
RICHARD L. SAMPSON,

    **Defendants.**

_____

DRIPPING WET WATER, INC.,
ALLISON H. SAMPSON, and
RICHARD L. SAMPSON,

    **Counterclaimants,**

    vs.

IDEX CORP., EASTERN PLASTICS, INC.,
PULSAFEEDER, INC., and
FELICE DIMASCIO,

    **Counterdefendants.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No.:  08 C 1114**

Hon. Milton I. Shadur
Senior U.S. District Judge
Courtroom:  2303

Hearing Date:  June 30, 2008
Hearing Time:  8:45 a.m.

## BRIEF OF THE DWW PARTIES AS TO WHETHER PRIOR DETERMINATION BARS THE CLAIM

1       BRIEF OF THE DWW PARTIES AS TO WHETHER PRIOR DETERMINATION BARS THE
CLAIM

## TABLE OF CONTENTS

PAGE

I.    INTRODUCTION AND BACKGROUND    2

II.   THE "FOUR CORNERS" OF THE SETTLEMENT AGREEMENT
      ESTABLISH AN EXPRESS RESERVATION OF DWW'S RIGHT
      TO LITIGATE THE CLAIM    4

III.  DWW'S COUNTERCLAIM    6

IV.   DWW'S CORRECTION OF  INVENTORSHIP AND OWNERSHIP
      CLAIM TOTHE DIMASCIO PATENTS    7

      A.  Definition – Inventorship    8

      B.  Patent Ownership    8

      C.  Correction of Inventorship    9

      D.  35 USC § 256    9

      E.  Interference    10

V.    DWW'S COUNTERCLAIM ADDRESSES CLAIMS AND
      DEFENSES RELATED TO INTERFERENCE
      AND PATENT INFRINGEMENT ALLEGATIONS    11

VI.   OWNERSHIP OF THE DIMASCIO PATENTS ADDRESSES
      CLAIMS  AND DEFENSES RELATED TO INTERFERENCE
      AND PATENT INFRINGEMENT ALLEGATIONS    12

VII.  DWW'S COUNTERCLAIM FOR RESTITUTION FOR THE
      IDEX PARTIES' UNJUST ENRICHMENT AND FRAUDULENT
      CONCEALMENT    13

VIII. CONCLUSION    15

## TABLE OF AUTHORITIES

| CASES | PAGE |
|---|---|
| Abbott Labs. v. Diamedix Corp., 47 F.3d 1130, 33 USPQ2d 1771, 1773 (Fed.Cir. 1995) | 12 |
| Allied Vision Group, Inc. v. RLI Vision Corp., 1997 U.S. Dist. LEXIS 10805, at *17 (N.D. Ill. July 18, 1997) | 14 |
| Beech Aircraft Corp. v. EDO Corp., 990 F.2d 1237, 1248 (Fed.Cir. 1993) | 12 |
| Doherty v. Kahn, 289 Ill.App. 3d 544, 682 N.E.2d 163, 176 (1st Dist. 1997) | 13 |
| Epic Metals Corp. v. H.H. Robertson Co., 870 F.2d 1574, 1577 (Fed.Cir. 1989) | 3 |
| Firemen's Annuity & Ben. Fund v. Municipal Employees', Officers', & Officials' Annuity & Ben. Fund, 219 Ill. App. 3d 707, 579 N.E.2d 1003 (1st Dist. 1991) | 14 |
| Halo Mfg. Co., 256 F.3d at 1297 | 3 |
| Herrmann v. Cencom Cable Assocs., 999 F.2d 223, 225 (7th Cir. 1993) | 3 |
| HPI Health Care Serv., Inc. v. Mt. Vernon Hosp., Inc., 131 Ill.2d 145, 545 N.E. 2d 672 (1993) | 14 |
| Indep. Wireless Tel. Cor. V. Kelley Co., 56 F.3d 1538, 1551, 35 USPQ2d 1065, 1074 (Fed.Cir. 1995) | 12 |
| Jones v. Hardy, 727 F.2d 1524, 1528 (Fed.Cir. 1984) | 12 |
| Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc., 575 F2d 530 540 (5th Cir. 1978) | 6 |
| Keith v. Aldridge, 900 F.2d 736, 741 (4th Cir. 1990) | 3 |
| Lutzker v. Plet., 843 F.2d 1364 (Fed.Cir. 1988) | 11 |

BRIEF OF THE DWW PARTIES AS TO WHETHER PRIOR DETERMINATION BARS THE CLAIM

## <u>TABLE OF AUTHORITIES</u>  (Continued)

| CASES | PAGE |
|---|---|
| <u>Matter of West Texas Marketing Corp.</u>, 12 F.3d 497, 500 (5th Cir. 1994) | 6 |
| <u>Medina v. Wood River Pipeline Co.</u>, 809 F.2d 531, 533-34 (8th Cir. 1987) | 3 |
| <u>Mohamed v. Exxon Corp.</u>, 796 S.W.2d 751, 755 (Tex.App.1990) | 6 |
| <u>Norfolk S. Corp. v. Chevron, USA</u>, 371 F.3d 1285, 1289 (11th Cir. 2004) | 3 |
| <u>Pannu v. Iolab Corp.</u>, 155 F.3d 1344, 1351 (Fed.Cir. 1998) | 12 |
| <u>Sa-Buttar Health & Med., P.C. v. TAP Pharmaceuticals, Inc.</u>, 2004 U.S. Dist. LEXIS 12175, at *11 (N.D. Ill. July 1, 2004). | 13 |
| <u>Semteck Int'l Inc. v. Lockheed Martin Corp.</u>, 531 U.S. 497, 507, 121 S. Ct. 1021, 149 L.Ed.2d 32 (2001) (citing <u>Stoll v. Gottlief</u>, 305 U.S. 165, 171-72, 59 S.Ct. 134, 83 L.Ed. 104 (1938) | 7 |
| <u>University of Colorado v. American Cyanamid Co.</u>, 342 F.3d 1298, 1305 (Fed.Cir. 2003) | 14 |
| <u>Urbanizadora Santa Clara, S.A. v. United States</u>, 518 F.2d 574, 578 (Ct.Cl. 1975 | 3 |

| STATUTES | |
|---|---|
| 35 U.S.C. § 102(g) | 11 |
| 35 U.S.C. § 116 | 8 |
| 35 U.S.C. § 135 | 10 |
| 35 U.S.C. § 256 | 8,9 |
| 1 George E. Palmer, <u>The Law of Restitution</u> §§ 1.1, 1.2 (1978) | 13 |
| § 2.12 at 161 (1978) | 13 |
| 18 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 4415, at 354 (2d ed 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| Douglas Laycock, <u>The Scope and Significance of Restitution</u>, 67 Tex.L.Rev. 1277, 1289 (1989) | 13 |
| Restatement (Second) of Judgment § 26(1)(a) (1982). . . . . . . . . . . . . . . . . . . . . . . . | 2 |

Defendants and Counterclaimants, Dripping Wet Water, Inc., Allison H. Sampson and Richard L. Sampson (hereinafter collectively "DWW"), by and through their undersigned attorneys, pursuant to Order of the Court submit the following Brief as to whether prior determination bars the claim.

## I.    INTRODUCTION AND BACKGROUND

The Settlement Agreement herein issue (Exhibit 1) contains an express reservation:

### "RECITALS

1.    The Halox Parties and DWW Parties are parties to an action entitled *Halox Technologies, Inc. v. Dripping Wet Water, Inc., Richard L. Sampson, and Allison H. Sampson*, presently pending in the United States District Court for the District of Connecticut as Case No. 3:03CV1008 (the "Litigation".)

       \*            \*          \*

3.    Without any admissions of any kind, and solely to avoid the expense, burdens, and hazards of the pending Litigation, the Parties to this Agreement desire to terminate the Litigation but preserve certain rights each may have.  <u>This settlement is intended to terminate the pending Litigation but not constitute a full and complete settlement of any and all disputes that may exists between the parties.</u>"  (page 1, emphasis added).

Further emphasis at page 2,

5.    <u>Reservation of Rights.  Except as stated in paragraph 4 above, each Party to this Agreement each fully reserves any and all rights such Party or its assignees and licenses may have as to claims and defenses related to patent interference proceedings and any alleged patent infringement.</u>

An exception to the normal rules of claim preclusion exists when "[t]he parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein. . . ."  <u>Restatement (Second) of Judgments</u> § 26(1)(a) (1982); <u>see also</u> 18

Charles Allan Wright & Arthur R. Miller, <u>Federal Practice andProcedure</u> § 4415, at 354

(2d ed 2002) ("[C]ourts have expressed willingness to honor an express agreement between

the parties that an action on one part of the claim will not preclude a second action on

another part of the same claim. . . ."). Thus, the parties can, in a separate agreement, like

the Settlement Agreement here, reserve the right to litigate a claim that would otherwise be

barred by res judicata. <u>Restatement (Second) of Judgments</u> § 26, cmt a ("So also the

parties may enter into an agreement, not directed to a particular contemplated action,

which may have the effect of preserving a claim that might otherwise be superseded by a

judgment...."). That reservation is express.[1]

This Declaratory Judgment action filed by the Idex parties in February, 2008,

contends the lawsuit filed by DWW on June 22, 2007 the United States District Court for

the Western District of Texas ( <u>Dripping Wet Water, Inc., et al. v. IDEX Corporation, et</u>

---

[1]  <u>See</u> e.g., <u>Norfolk S. Corp. v. Chevron, USA</u>, 371 F.3d 1285, 1289 (11th Cir. 2004) ("In
determining the <u>res judicata</u> effect of an order of dismissal based upon a settlement
agreement, we should also attempt to effectuate the parties' intent. The best evidence of
that intent is, of course, the settlement agreement itself . . .as interpreted according to
traditional principles of contract law.");  <u>Halo Mfg. Co.</u>, 256 F.3d at 1297 (noting that in a
settlement and dismissal judgment, the parties can expressly reserve the right to later
litigate an issue); <u>Herrmann v. Cencom Cable Assocs.</u>, 999 F.2d 223, 225 (7th Cir. 1993)
(noting that "[t]he parties can also if they want agree to split a single claim into two or
more suits"); <u>Keith v. Aldridge</u>, 900 F.2d 736, 741 (4th Cir. 1990) (holding that "[c]laim
preclusion will not apply, however, if the parties intended to settle only one part of a single
claim and intended to leave another part open for future litigation"); <u>Epic Metals Corp. v.
H.H. Robertson Co.</u>, 870 F.2d 1574, 1577 (Fed.Cir. 1989) (stating that an express
reservation "must be discerned within the four corners of the consent decree, and cannot
be expanded beyond the decree's express terms"); <u>Medina v. Wood River Pipeline Co.</u>, 809
F.2d 531, 533-34 (8th Cir. 1987) (recognizing general rule that parties be express agreement
consent to the splitting of a cause of action); <u>Urbanizadora Santa Clara, S.A. v. United
States</u>, 518 F.2d 574, 578 (Ct.Cl. 1975) ("If plaintiff intended to preserve and pursue a
claim . . . following the execution of the release, it was incumbent on plaintiff to manifest
this intention in a clearly recognizable manner. . .").

3        BRIEF OF THE DWW PARTIES AS TO WHETHER PRIOR DETERMINATION BARS THE
         CLAIM

al., CV 5:07-cv-531-XR) ,and now pled as DWW's counterclaim here,  is barred by the doctrine of res judicata.

The principal claim raised by Idex is that:  "…Defendants' claims in the Texas action are further precluded by the prior Settlement Agreement under the doctrine of *res judicata* because (a) the parties are identical or in privity; (b) a court of competent jurisdiction rendered the prior judgment; (c) the prior action concluded with a final judgment on the merits; and (d) both actions involved the same claim or cause of action." (Para. 19, Idex's First Amended Complaint.)

The parties do not differ significantly.  DWW is Defendant in this Action, Plaintiff in the Texas suit.  The Individual parties, e.g. DiMascio is a Plaintiff in this suit, and a Defendant in the Texas suit.  The IDEX parties have tacked on Eastern Plastics, Inc. as a party in the suit, but this is not sufficient to create a difference between the parties.


II.    THE "FOUR CORNERS" OF THE SETTLEMENT AGREEMENT ESTABLISH AN EXPRESS RESERVATION OF DWW'S RIGHT TO LITIGATE THE CLAIM

The Settlement Agreement was <u>not</u> a full and complete settlement of all claims .  The Dismissal of the prior "Litigation" was pursuant to the parties' Exhibit 1 agreement :

"3.  <u>Dismissal of Litigation</u>.  The Parties stipulate and agree that the Litigation, Halox Technologies, Inc.'s Second Amended Complaint, and the DWW Parties' Counterclaim, shall each be dismissed with prejudice.  The Parties agree to execute a stipulation to dismiss, substantially in the form of Exhibit A hereto, and shall cooperate with each other in the filing of the stipulation and the dismissal of the Litigation with

prejudice.

      4.     <u>Declaration of Ownership</u>.  The Halox Parties acknowledge and agree that DWW is the owner of patent application 09/919,918…"

The specific reference to "patent application 09/919,918" is to the Sampson US Patent No. 7,087,208 ( Exhibit 2, Face Sheet ) for the Court's convenience.  The Sampson Patent is not in issue in this lawsuit and ownership of the Exhibit 2 patent has been clearly conceded by the Idex parties.

      Rather,  the subject of the DWW Counterclaim relates to the ownership and inventorship of the DiMascio Patents (Exhibit 3, 4 and 5 Face Sheets).  The DiMascio Patents issued on July 5, 2005; February 20, 2007; and July 10, 2007 respectively.  The present Counterclaim was filed in part to correct inventorship of these DiMascio patents and certain pending applications. (Exhibit 6).

      In fact, the language of the Settlement Agreement expressly reserves "…any and all rights such Party or its assignees and licenses may have as to claims and defenses RELATED TO (emphasis added) patent interference proceedings and any alleged patent infringement."

      The language defining the respective parties' Reservation of Rights was not limited to a pending action for patent infringement , nor to a pending interference proceeding (whether pending in the Patent Office, or in a Court).  Rather, the Exhibit 1 Agreement uses the phrase "related to"…"any alleged patent infringement".  As discussed infra, threshold issues of patent ownership and inventorship are part and parcel of  a party's right to lawfully allege any  patent infringement .

5      BRIEF OF THE DWW PARTIES AS TO WHETHER PRIOR DETERMINATION BARS THE CLAIM

In short, the language of the Settlement Agreement is not preclusive as to ownership, nor inventorship of the DiMascio Patents . There is simply no support for finding that the prior judgment that resulted from the parties' Settlement Agreement, containing express reservations, gave it any preclusive teeth as to the DiMascio Patents .

III.    **DWW'S COUNTERCLAIM**

The DiMascio Patents erroneously name Counter-Defendant DiMascio as the only inventor when, in fact, Allison Sampson and Richard Sampson made substantial contributions to the claimed inventions included in the later-filed DiMascio Patents.  Each of the Sampsons verily believe the Sampsons are each entitled to recognition as co-inventors of the subject matter claimed in the DiMascio Patents.  Each Counterclaimant also has an ownership interest in the DiMascio Patents which improperly name Defendant DiMascio as the sole inventor.

Clearly, the judgment in the prior litigation does not qualify as a judgment "on the merits."

No court has ever adjudicated the merits of DWW's inventorship and ownership claims as to the DiMascio Patents.   The judgment entered in the prior litigation was pursuant to the Exhibit 1 Settlement Agreement, not mentioning any of the substantive

6        BRIEF OF THE DWW PARTIES AS TO WHETHER PRIOR DETERMINATION BARS THE
         CLAIM

issues raised by DWW nor the Idex parties.   The Connecticut District Court neither found

inventorship, nor ownership issues , concerning the DiMascio Patents , nor decided the

merits of  DWW's  present Counterclaim .

The Exhibit 1 Settlement Agreement was not approved and embodied in a final

judgment of the court. Accordingly, the Agreement is not entitled to a full res judicata

effect."[2]  Res judicata applies where the parties to a settlement objectively manifest an

intent to cement their agreement with claim preclusion.[3]  Here, the Agreement manifests an

opposite intent.

*Res judicata* effect of a federal judgment is not determined by state law.  It is

determined by federal common law, which requires state and federal courts to give federal

court judgments the effect prescribed by the federal law of *res judicata*.  Semteck Int'l Inc.

v. Lockheed Martin Corp., 531 U.S. 497, 507, 121 S. Ct. 1021, 149 L.Ed.2d 32 (2001) (citing

Stoll v. Gottlief, 305 U.S. 165, 171-72, 59 S.Ct. 134, 83 L.Ed. 104 (1938)).


## IV.  DWW'S CORRECTION OF INVENTORSHIP AND OWNERSHIP  CLAIM TO THE DIMASCIO PATENTS

The inventorship of a patent is central to the patent system of the United States.

---

[2] Matter of West Texas Marketing Corp., 12 F.3d 497, 500 (5th Cir. 1994) (internal
quotations omitted).

[3] "Thus, when determining the effect to be given a decree entered by consent of the parties,
consideration is to be given to their intention with respect to the finality to be accorded the
decree as reflected by the record and the words of their agreement." Kaspar Wire Works,
Inc. v. Leco Engineering & Machine, Inc., 575 F2d 530, 540 (5th Cir. 1978) (holding that a
consent judgment dismissing a prior declaratory judgment action alleging patent invalidity
and non-infringement did not bar the defendants from contesting the validity of plaintiffs'
patent because the parties did not specifically include the patent that was the subject of this
lawsuit in their consent judgment).

BRIEF OF THE DWW PARTIES AS TO WHETHER PRIOR DETERMINATION BARS THE
CLAIM

Inventorship identifies the true and correct inventor of the claimed invention. The inventor is the individual who first conceived of the invention and also the first owner of a patent on the invention.

Incorrect inventorship on an issued patent jeopardizes the validity of the patent. When good faith mistakes are made regarding inventorship of a patent application, various means are available to correct the inventorship either before or after the patent issues. Such a correction will preserve the validity of the patent. A putative inventor left unnamed on a patent may elect either administrative or judicial means of correcting inventorship.

A. <u>Definition – Inventorship</u>

The patent system of the United States is concerned with the inventorship of a patent. This concern stems from the U.S.'s "first-to-invent" rule applied when the United States Patent and Trademark Office ("PTO") considers the award of a patent. Patents in the United States are awarded to an "inventorship entity" which can be either a sole inventor or multiple co-inventors.

In general, the inventor is the individual who first conceived of the invention. The traditional test of conception is "[w]hether the inventor had an idea what was definite and permanent enough that one skilled in the art could understand the invention. Courts have interpreted conception to require the inventor "to describe his invention with particularity" in order to demonstrate the proper level of concreteness in his invention.

B. <u>Patent Ownership</u>

Patents are treated as personal property under United States law. Like personal property, patent rights can be assigned through the use of written instruments. Such

assignments must be recorded in the PTO.  Patent rights may be conveyed by the rightful

owner in whole or in part similar to other forms of personal property.

Inventorhip "provides the starting point for determining ownership of patent rights.

The true and original inventor is the owner of the issued patent, "absent some effective

transfer or obligation to assign.  The inventor may transfer the patent to other entities by

written instruments recorded in the PTO.


C.  Correction of Inventorship

35 U.S.C. § 116 and 35 U.S.C. § 256 describe procedures that allow for the

correction of inventorship on patent applications and issued patents.  Legislative history

indicates Congress' purpose behind these provisions:

> Very often two or three people make an invention together.  They must apply
> as joint inventors.  If they make a mistake in determining who are the true
> inventors, they do so at their peril.  This provision permits a bona fide
> mistake in joining a person as inventor or in failing to joint a person as an
> inventor to be corrected.

D.  35 USC § 256

After a patent has issued, its inventorship may be corrected under 35 USC § 256.

This section allows the correction of inventorship on an issued patent when the mistake was

the result of a good faith error.

USC § 256 states:

> Whenever through error a person is named in an issued patent as the

BRIEF OF THE DWW PARTIES AS TO WHETHER PRIOR DETERMINATION BARS THE
CLAIM

inventor, or through error an inventor is not named in an issued patent and

such error arose without any deceptive intention on his part, the Director

may, on application of all the parties and assignees, with proof of the facts

and such other requirements as may be imposed, issue a certificate correcting

such error.


Where the omission of an inventor is an excusable inadvertence and not attributable

to bad faith, § 256 can be used to correct inventorship of an issued patent.  To demonstrate

lack of deceptive intent, an applicant must convince a court weighing all the evidence of his

good faith action.

The first paragraph of  256 allows the correction of a patent's inventorship through

application to the PTO.  After 1997, the application to the PTO no longer required "factual

showings to establish a lack of deceptive intent. . ., with a statement to that effect being

sufficient. . ."  However, all concerned parties must apply to the PTO for correction.

Therefore, this is not a particularly useful means for a putative inventor disputing the

inventorship of a patent.  After a PTO decision , courts retain the right to review the

change in inventorship for propriety.

The second method to invoke § 256 is by Notice, hearing, and order of a court

"before which such matter is called in question."  Courts have split on whether consent to

all parties is required before judicial correction under § 256.

E.  <u>Interference</u>

BRIEF OF THE DWW PARTIES AS TO WHETHER PRIOR DETERMINATION BARS THE
CLAIM

Another means for a putative inventor to assert inventorship is to begin an interference proceeding under 35 U.S.C. § 135. To do so, the putative inventor must file a patent application for the disputed invention with the correct inventorship and request an interference proceeding with regard to the original patent. This doest not require consent from other involved parties and can be initiated by the putative inventor alone.

An interference proceeding in the PTO occurs when more than one application seeks to cover substantially the same invention. The proceeding resolves conflicting claims on the same invention. During an interference proceeding, the PTO attempts to "decide who among multiple patent applicants (or an applicant and a patentee) was the first to invent claimed subject matter." The PTO will resolve the interference by allowing the patent with the correct inventorship and rejecting the others.

U.S. Patent law is unique in recognizing the inventive activity of individuals as significant in deciding who is entitled to patent rights on an invention. The question of who made an invention first is important in two different situations. One is where the U.S. patent and Trademark Office (PTO), or a court, decides which of two parties is entitled to a patent on a single invention. This is called a patent interference. The other is where a court decides whether a patent is invalid because someone else made the invention first. This latter situation typically arises as part of an invalidity defense to patent infringement. Both situations are governed by 35 U.S.C. § 102(g), and both involve a determination of which is "first to invent."

The rules of conception, reduction to practice, and diligence are generally the same in a patent interference proceeding and in an invalidity defense in district court.

11      BRIEF OF THE DWW PARTIES AS TO WHETHER PRIOR DETERMINATION BARS THE
        CLAIM

V.    **DWW COUNTERCLAIM ADDRESSES CLAIMS AND DEFENSES RELATED TO INTERFERENCE PROCEEDINGS AND PATENT INFRINGEMENT ALLEGATIONS.**

The relevant portion of section 102(g) states:

A person shall be entitled to a patent unless—

> (g)(2) before such person's invention thereof, the invention was made in this
>
> country by another inventor who had not abandoned, suppressed, or
>
> concealed it.  35 U.S.C. § 102(g)(2004).

In interference cases, and in defense of patent infringement actions , one party will sometimes assert that the other party abandoned the invention by unreasonably delaying disclosure of the invention after first reducing it to practice.  See <u>Lutzker v. Plet.</u>, 843 F.2d 1364, 1367 (Fed.Cir. 1988)

VI.    **OWNERSHIP OF THE DIMASCIO PATENTS ADDRESS CLAIMS AND DEFENSES RELATED TO INTERFERENCE AND PATENT INFRINGEMENT ALLEGATIONS**

Standing to bring a patent infringement suit is circumscribed by 35 U.S.C. § 281, which provides that "[a] patentee shall have remedy in a  civil action for infringement of this patent."  35 U.S.C. § 281; <u>Abbott Labs. V. Diamedix Corp.</u>, 47 F.3d 1128, 1130, 33 USPQ2d 1771, 1773 (Fed.Cir. 1995).  Thus, the rule that an exclusive licensee who does not have all substantial rights in a patent must join the patent owner is derived from the statute that defines what parties have standing to sue for patent infringement.  Whether a party

BRIEF OF THE DWW PARTIES AS TO WHETHER PRIOR DETERMINATION BARS THE CLAIM

can bring suit in its own name is jurisdictional and, therefore, is not waived by a party's failure to raise the issue in the district court.  See Indep. Wireless Tel. Corp. v. Kelley Co., 56 F.3d 1538, 1551, 35 USPQ2d 1065, 1074 (Fed.Cir. 1995) (stating that "[t]he question of standing to sue is a jurisdictional one").

Still, issues of patent ownership are distinct from questions of inventorship.  See Beech Aircraft Corp. v. EDO Corp., 990 F.2d 1237, 1248 (Fed.Cir. 1993) ("It is elementary that inventorship and ownership are separate issues."); see also Jones v. Hardy, 727 F.2d 1524, 1528 (Fed.Cir. 1984) ("each claim must be considered as defining a separate invention.").  The Federal Circuit has held :  "All that is required of a joint inventor is that he or she (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed inventor that is not insignificant in quality, when the contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current sate of the art."  Pannu v. Iolab Corp., 155 F.3d 1344, 1351 (Fed.Cir. 1998) .

Thus, under the rule in Ethicon, a co-inventor of even one claim in the DiMascio Patents, presumptively has a pro rata undivided ownership interest in the entire patent.

## VII.   DWW'S COUNTERCLAIM FOR RESTITUTION FOR  UNJUST ENRICHMENT AND FRAUDULENT CONCEALMENT.

The Sampsons' claim of unjust enrichment is a legal claim in quasi-contract for money damages based upon principles of restitution.  See 1 George E. Palmer, The Law of

Restitution §§ 1.1, 1.2 (1978).

[C]ourts must resort to general considerations of fairness, taking into account the

nature of the defendant's wrong, the relative extent of his or her contribution, and

the feasibility of separating this from the contribution traceable to the plaintiff's

interest. 1 George E. Palmer, The Law of Restitution § 2.12 at 161 (1978)

[hereinafter "Palmer"]. Thus, the more culpable the defendant's behavior, and the

more direct the connection between the profits and wrongdoing, the more likely that

plaintiff can recover all defendant's profits. See, e.g., Douglas Laycock, The Scope

and Significance of Restitution, 67 Tex.L.Rev. 1277, 1289 (1989). The trial court

must ultimately decide whether the whole circumstances of a case point to the

conclusion that the defendant's retention of any profit is unjust.

Id. at 119.

Under Illinois law, an allegation of a mere promise of future conduct, without more,

is not actionable as fraud. Sa-Buttar Health & Med., P.C. v. TAP Pharmaceuticals, Inc.,

2004 U.S. Dist. LEXIS 12175, at *11 (N.D. Ill. July 1, 2004). Doherty v. Kahn, 289 Ill.App.

3d 544, 682 N.E.2d 163, 176 (1st Dist. 1997). However, Illinois law recognizes a "scheme

exception." Allied Vision Group v. RLI Vision Corp., 1997 U.S. Dist. LEXIS 10805, at *12.

Promissory fraud is actionable if it is part of a larger pattern of deception that reasonably

induces reliance. Steadfast, 2F.Supp.2d at 1060. A scheme to defraud may exist where a

defendant lies repeatedly to a single promise. See, HPI Health Care Serv., Inc. v. Mt.

Vernon Hosp., Inc., 131 Ill.2d 145, 545 N.E. 2d 672 (1993).

In this case there is no question that any benefit IDEX received came at the

Sampsons' expense.  DWW alleges IDEX was unjustly enriched by its conduct in taking for itself exclusivity rights in the Sampsons' technology and then secretly patenting that technology without the Sampsons' knowledge or consent.  Simply put, it would be unjust to allow IDEX to retain the benefit conferred without paying for its value.

DWW has alleged that IDEX has unjustly retained a benefit to DWW's detriment against the fundamental principles of justice and equity.  <u>Firemen's Annuity & Ben. Fund v. Municipal Employees', Officers', & Officials' Annuity & Ben. Fund</u>, 219 Ill. App. 3d 707, 579 N.E.2d 1003 (1st Dist. 1991).   IDEX has unjustly retained the benefits of the inventions and exclusive ownership of the DiMascio patents  which is  improper retention of the benefits and violates DWW's rights.  These allegations sufficiently state a claim for unjust enrichment under Illinois law and follow from the tortious conduct of the Idex parties.

In <u>University of Colorado v. American Cyanamid Co.</u>, 342 F.3d 1298, 1305 (Fed.Cir. 2003), the Federal Circuit held an unjust enrichment claim "springs not from an attempt to enforce intellectual property rights," but instead from the unlawful use of confidential information.  <u>Id</u>. at 1306.  The fact that [defendant] improperly secured the . . . patent and used this patent to obtain  profits provides a basis  for  unjust enrichment claims.

## VIII.  <u>CONCLUSION</u>

For the foregoing reasons, the DWW Parties respectfully request that this Court honor the Exhibit 1  Agreement between the parties, i.e., the Settlement Agreement containing an express Reservation of Rights as to claims and defenses <u>related to</u> ... any alleged patent infringement.  Accordingly,  DWW's  Counterclaim  seeks a determination

BRIEF OF THE DWW PARTIES AS TO WHETHER PRIOR DETERMINATION BARS THE CLAIM

of the threshold inventorship and ownership issues related to the DiMascio Patents.

Respectfully submitted,

Frank Frisenda (Admitted PHV)
FRISENDA, QUINTON & NICHOLSON
11601 Wilshire Blvd., Ste. 500
Los Angeles, CA 90025
Tele: 702/792-3910
Fax: 702/486-4176


LOCAL COUNSEL:

Leon I. Edelson
EDELSON IP LAW GROUP, LTD.
Bannockburn Executive Plaza
2275 Half Day Road, Suite 122
Bannockburn, Ill. 60015
Tele: 847/374-9797
Fax: 847/374-9799

Attorneys for Dripping Wet Water,
Allison Sampson and Richard Sampson

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into as of the 26th day of May, 2006, by and between Halox Technologies, Inc., IDEX Corporation, and Pulsafeeder, Inc. (collectively, the "Halox Parties"), on the one side, and Dripping Wet Water, Inc., Richard L. Sampson, and Allison H. Sampson (collectively, the "DWW Parties"), on the other side. The Halox Parties and DWW Parties are collectively referred to as the Parties to this Agreement.

## RECITALS

1.    The Halox Parties and DWW Parties are parties to an action entitled *Halox Technologies, Inv. v. Dripping Wet Water, Inc., Richard L Sampson, and Allison H. Sampson*, presently pending in the United States District Court for the District of Connecticut as Case No. 3:03CV1008 (the "Litigation".)

2.    In the Litigation, Halox Technologies, Inc. filed a Second Amended Complaint against the DWW Parties.  The DWW Parties filed a Counterclaim against the Halox Parties.

3.    Without any admissions of any kind, and solely to avoid the expense, burdens, and hazards of the pending Litigation, the Parties to this Agreement desire to terminate the Litigation but preserve certain rights each may have.  This settlement is intended to terminate the pending Litigation but not constitute a full and complete settlement of any all disputes that may exist between the parties.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.    Recitals.  The recitals set forth above are incorporated into and made a part of this Agreement as if fully set forth herein.

2.    Effectiveness.  This Agreement shall become effective upon delivery of fully executed counterpart copies of this Agreement to each of the Parties.

Halox adus. DWW | Settlement Agreement
executed copy
Exhibit 1

- 17 -

3.  <u>Dismissal of Litigation.</u>  The Parties stipulate and agree that the Litigation, Halox Technologies, Inc.'s Second Amended Complaint, and the DWW Parties' Counterclaim, shall each be dismissed with prejudice.  The Parties agree to execute a stipulation to dismiss, substantially in the form of Exhibit A hereto, and shall cooperate with each other in the filing of the stipulation and the dismissal of the Litigation with prejudice.

4.  <u>Declaration of Ownership.</u>  The Halox Parties acknowledge and agree that DWW is the owner of patent application 09/919,918.

5.  <u>Reservation of Rights.</u>  Except as stated in paragraph 4 above, each Party to this Agreement each fully reserves any and all rights such Party or its assignees and licensees may have as to claims and defenses related to patent interference proceedings and any alleged patent infringement.

6.  <u>Consent to Representation.</u>  The Halox Parties consent to the representation of the DWW Parties by Harvey Jacobson.

7.  <u>No Admissions.</u>  Nothing contained in this Agreement shall be considered an admission of liability on the part of either Party.

8.  <u>Binding Agreement.</u>  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective parents, subsidiaries, affiliates, officers, directors, shareholders, employees, agents, successors and assigns.

9.  <u>Amendment.</u>  No amendment, interpretation, waiver, or termination of any of the provisions of this Agreement shall be effective unless made in writing and signed by each of the Parties to this Agreement.

10.  <u>Attorneys' Fees.</u>  Each Party shall bear its own attorneys' fees, costs and expenses incurred in the preparation and execution of this Agreement and in connection with the Litigation.

11.   Non-Reliance. Each Party represents and warrants to the other that it is not relying on any statement or representation of the other Party not expressly stated in this Agreement.

12.   Integration. This Agreement constitutes the entire understanding between the Parties and supersedes any prior understandings, promises, or agreements, written or oral, that in any way relate to the subject matter hereof.

13.   Counterparts. This Agreement may be executed in counterparts.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

**IDEX CORPORATION, INC.**                      **DRIPPING WET WATER, INC.**

By: _____                            By: _____

Title: _Vice President - General Counsel_       Title: _____

Date: _May 8, 2006_                             Date: _____

**HALOX TECHNOLOGIES, INC.**                    **RICHARD L. SAMPSON**
**PULSAFEEDER, INC.**

By: _____                             _____

Title: _PRESIDENT, PULSAFEEDER_ Date: _____

Date: _5/26/06_

                                                **ALLISON H. SAMPSON**

                                                _____

                                                Date: _____

W0026557v3

-3-

11.    Non-Reliance. Each Party represents and warrants to the other that it is not relying on any statement or representation of the other Party not expressly stated in this Agreement.

12.    Integration. This Agreement constitutes the entire understanding between the Parties and supersedes any prior understandings, promises, or agreements, written or oral, that in any way relate to the subject matter hereof.

13.    Counterparts. This Agreement may be executed in counterparts.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

**IDEX CORPORATION, INC.**

By: _____

Title: _____

Date: _____

**HALOX TECHNOLOGIES, INC.**
**PULSAFEEDER, INC.**

By: _____

Title: _____

Date: _____

**DRIPPING WET WATER, INC.**

By: _Richard J. Sampson_

Title: _Vice President_

Date: _June 8, 2006_

**RICHARD L. SAMPSON**

_Richard J. Sampson_

Date: _June 8, 2006_

**ALLISON H. SAMPSON**

_Allison H. Sampson_

Date: _6/8/06_

WD026557v3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

HALOX TECHNOLOGIES, INC.,

        Plaintiff,
        Counterclaim Defendant

        v.

DRIPPING WET WATER, INC.,
RICHARD L. SAMPSON and
ALLISON H. SAMPSON,

        Defendants.
        Counterclaim Plaintiffs

PULSAFEEDER, INC. and IDEX CORP.

        Additional Counterclaim
        Defendants

Civil Action No. 3:03CV01008 (SRU)

## STIPULATION TO DISMISS WITH PREJUDICE

The parties, by their undersigned counsel, hereby stipulate to the dismissal with prejudice of the Second Amended Complaint and the Counterclaim in this action, each party to bear its own costs and attorneys fees, all matters in controversy having been fully compromised and settled.

For Plaintiff and
Counterclaim Defendants,

_Gerald G. Saltarelli, Esq._
Admitted: *Pro Hac Vice*
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street, Suite 1800
Chicago, IL 60602
Phone: 312-444-9660
Fax: 312-444-9287

- and -

Charles F. O'Brien (ct 22074)
Michael J. Rye (ct 18354)
Cantor Colburn LLP
55 Griffin Road South
Bloomfield, Connecticut 06002
Telephone: (860) 286-2929
Facsimile: (860) 286-0115

For Defendants and
Counterclaim Plaintiffs,

_____
Frank Frisenda, Jr.
Admitted *Pro Hac Vice* (0670)
Frisenda, Quinton & Nicholson
11601 Wilshire Blvd., Suite 500
Los Angeles, California 90025
Telephone: (702) 792-3910
Facsimile: (702) 792-3604

- and -

Edward R. Scofield, Esq. (CT00455)
Zeldes, Needle & Cooper PC
1000 Lafayette Blvd., Suite 500
Bridgeport, CT 06604
Phone: (203)333-9441
Fax: (203)333-1489

For Plaintiff and
Counterclaim Defendants,

Gerald G. Saltarelli, Esq.
Admitted: *Pro Hac Vice*
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street, Suite 1800
Chicago, IL 60602
Phone: 312-444-9660
Fax: 312-444-9287

- and -

Charles F. O'Brien (ct 22074)
Michael J. Rye (ct 18354)
Cantor Colburn LLP
55 Griffin Road South
Bloomfield, Connecticut 06002
Telephone: (860) 286-2929
Facsimile: (860) 286-0115

For Defendants and
Counterclaim Plaintiffs,

Frank Frisenda, Jr.
Admitted Pro Hac Vice (0670)
Frisenda, Quinton & Nicholson
11601 Wilshire Blvd., Suite 500
Los Angeles, California 90025
Telephone: (702) 792-3910
Facsimile: (702) 792-3604

- and -

Edward R. Scofield, Esq. (CT00455)
Zeldes, Needle & Cooper PC
1000 Lafayette Blvd., Suite 500
Bridgeport, CT 06604
Phone: (203)333-9441
Fax: (203)333-1489

# EXHIBIT 2

(12) **United States Patent**
Sampson et al.

(10) **Patent No.:** **US 7,087,208 B2**
(45) **Date of Patent:** **Aug. 8, 2006**

(54) **METHODS FOR MAKING CHLOROUS ACID AND CHLORINE DIOXIDE**

(76) Inventors: **Allison H. Sampson**, 35 Grace View Dr., Easton, CT (US) 06612; **Richard L. Sampson**, 35 Grace View Dr., Easton, CT (US) 06612

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 259 days.

(21) Appl. No.: **09/919,918**

(22) Filed: **Aug. 2, 2001**

(65) **Prior Publication Data**

US 2003/0064018 A1    Apr. 3, 2003

(51) **Int. Cl.**
| | |
|---|---|
| *C01B 11/02* | (2006.01) |
| *C01B 11/08* | (2006.01) |

(52) **U.S. Cl.** ....................... **423/472**; 423/477; 423/478
(58) **Field of Classification Search** ................ 423/472, 423/477, 478
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,684,437 A | 8/1972 | Callerame | 423/472 |
| 3,828,097 A | 8/1974 | Callerame | 423/472 |
| 3,857,737 A | 12/1974 | Kemp et al. | 136/120 FC |
| 4,504,442 A | 3/1985 | Rosenblatt et al. | 422/37 |
| 4,681,739 A | 7/1987 | Rosenblatt et al. | 422/37 |
| 4,880,711 A | 11/1989 | Luczak et al. | 429/40 |
| 5,008,096 A | 4/1991 | Ringo | 423/477 |
| 5,078,908 A | 1/1992 | Ripley et al. | 252/187.21 |
| 5,100,652 A * | 3/1992 | Kross et al. | 424/53 |
| 5,391,533 A | 2/1995 | Peterson et al. | 502/262 |
| 5,435,984 A | 7/1995 | Daly et al. | 423/477 |
| 5,651,996 A | 7/1997 | Roozdar | 424/665 |
| RE36,064 E | 1/1999 | Davidson et al. | 424/665 |
| 6,063,425 A | 5/2000 | Kross et al. | 426/335 |
| 6,077,495 A | 6/2000 | Speronello et al. | 423/477 |
| 6,123,966 A | 9/2000 | Kross | 424/665 |
| 6,171,485 B1 | 1/2001 | Küke | 210/192 |
| 6,200,557 B1 | 3/2001 | Ratcliff | 424/78.02 |
| 6,238,643 B1 | 5/2001 | Thangaraj et al. | 423/477 |
| 6,265,343 B1 | 7/2001 | Daly et al. | 502/339 |
| 6,287,533 B1 | 9/2001 | Khan et al. | 423/478 |
| 2001/0001655 A1 | 5/2001 | Kuke | 423/477 |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0 365 501 | 4/1990 |

(Continued)

OTHER PUBLICATIONS

XP-002227957; JP 6271301; Suido Kiko Co Ltd; 1994; abstract.

(Continued)

*Primary Examiner*—Ngoc-Yen Nguyen
(74) *Attorney, Agent, or Firm*—Jacobson Holman PLLC

(57) **ABSTRACT**

Chlorous acid is generated from a chlorite salt precursor, a chlorate salt precursor, or a combination of both by ion exchange. The ion exchange material facilitates the generation of chlorous acid by simultaneously removing unwanted cations from solution and adding hydrogen ion to solution. Chlorine dioxide is generated in a controlled manner from chlorous acid by catalysis. Chlorine dioxide can be generated either subsequent to the generation of chlorous acid or simultaneously with the generation of chlorous acid. For catalysis of chlorous acid to chlorine dioxide, the chlorous acid may be generated by ion exchange or in a conventional manner. Ion exchange materials are also used to purify the chlorous acid and chlorine dioxide solutions, without causing degradation of said solutions, to exchange undesirable ions in the chlorous acid and chlorine dioxide solutions with desirable ions, such as stabilizing ions, and to adjust the pH of chlorous acid and chlorine dioxide solutions.

**29 Claims, 2 Drawing Sheets**



*Exhibit 2*

# EXHIBIT 3

(12) **United States Patent**
DiMascio

(10) Patent No.: **US 6,913,741 B2**
(45) Date of Patent: **Jul. 5, 2005**

(54) **SYSTEM AND PROCESS FOR PRODUCING HALOGEN OXIDES**

(75) Inventor: **Felice DiMascio**, Rocky Hill, CT (US)

(73) Assignee: **Halox Technologies, Inc.**, Bridgeport, CT (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 214 days.

(21) Appl. No.: **10/065,259**

(22) Filed: **Sep. 30, 2002**

(65) **Prior Publication Data**

US 2004/0071627 A1 Apr. 15, 2004

(51) Int. Cl.$^7$ ..................... **C01B 11/02**
(52) U.S. Cl. ...................... **423/477**; 423/472; 423/462; 204/634
(58) Field of Search ................................. 423/477, 472, 423/462; 204/634

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,717,237 A | 9/1955 | Rempel | 204/101 |
| 3,386,915 A | 6/1968 | Rutschi | 210/62 |
| 3,684,437 A | 8/1972 | Callerame | 423/472 |
| 3,763,006 A | 10/1973 | Callerame | 204/103 |
| 3,878,072 A | 4/1975 | Cook, Jr. et al. | 204/95 |
| 3,884,777 A | 5/1975 | Harke et al. | 204/84 |
| 3,904,496 A | 9/1975 | Harke et al. | 204/98 |
| 4,032,452 A * | 6/1977 | Davis | 210/243 |
| 4,115,217 A | 9/1978 | Larsson et al. | 204/95 |
| 4,234,446 A | 11/1980 | Ramras | 252/187 R |
| 4,250,144 A | 2/1981 | Ratigan | 422/112 |
| 4,308,117 A | 12/1981 | Sweeney | 204/101 |
| 4,362,707 A | 12/1982 | Hardee et al. | 423/478 |
| 4,381,290 A | 4/1983 | Hardee et al. | 423/478 |
| 4,426,263 A | 1/1984 | Hardee et al. | 204/101 |
| 4,432,856 A | 2/1984 | Murakami et al. | 204/237 |
| 4,526,904 A * | 7/1985 | Kishida et al. | 521/26 |
| 4,542,008 A | 9/1985 | Capuano et al. | 423/477 |

(Continued)

Primary Examiner—Ngoc-Yen Nguyen
(74) Attorney, Agent, or Firm—Cantor Colburn LLP

(57) **ABSTRACT**

A system and process for oxidizing inorganic or organic species is disclosed. The system and process includes feeding a dilute aqueous alkali metal halite solution into a cation exchange column, wherein the cation exchange column contains a cation exchange material; contacting the dilute aqueous alkali metal halite solution with the cation exchange material to produce an effluent containing halous acid; feeding the effluent containing halous acid into a catalytic reactor containing a catalytic material; and contacting the halous acid containing effluent with the catalytic material to produce a halogen oxide.

**17 Claims, 6 Drawing Sheets**



Exhibit 3

# EXHIBIT 4

US007179363B2

(12) **United States Patent** (10) **Patent No.:** **US 7,179,363 B2**
DiMascio et al. (45) **Date of Patent:** **Feb. 20, 2007**

(54) **ELECTROLYTIC PROCESS FOR GENERATING CHLORINE DIOXIDE**

(75) Inventors: **Felice DiMascio**, Rocky Hill, CT (US); **Mike Hunter**, Workingham Berkshire (GB)

(73) Assignee: **Halox Technologies, Inc.**, Bridgeport, CT (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 428 days.

(21) Appl. No.: **10/604,712**

(22) Filed: **Aug. 12, 2003**

(65) **Prior Publication Data**

US 2005/0034997 A1 Feb. 17, 2005

(51) **Int. Cl.**
*C25B 1/26* (2006.01)

(52) **U.S. Cl.** ...................................... 205/556; 205/500

(58) **Field of Classification Search** ................ 205/556, 205/500
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,717,237 | A | 9/1955 | Rempel |
| 3,386,915 | A | 6/1968 | Rutschi et al. |
| 3,684,437 | A | 8/1972 | Callerame |
| 3,763,006 | A | 10/1973 | Callerame |
| 3,878,072 | A | 4/1975 | Cook, Jr. et al. |
| 3,884,777 | A | 5/1975 | Harke et al. |
| 3,904,496 | A | 9/1975 | Harke et al. |
| 4,115,217 | A | 9/1978 | Larsson et al. |
| 4,234,446 | A | 11/1980 | Ramras |
| 4,250,144 | A | 2/1981 | Ratigan |
| 4,308,117 | A | 12/1981 | Sweeney |
| 4,362,707 | A | 12/1982 | Hardee et al. |
| 4,381,290 | A | 4/1983 | Hardee et al. |
| 4,426,263 | A | 1/1984 | Hardee et al. |

| | | | | |
|---|---|---|---|---|
| 4,432,856 | A | 2/1984 | Murakami et al. | |
| 4,542,008 | A | 9/1985 | Capuano et al. | |
| 4,632,876 | A | 12/1986 | Laird et al. | |
| 4,683,039 | A | 7/1987 | Twardowski et al. | |
| 4,725,390 | A | 2/1988 | Laird et al. | |
| 4,767,510 | A | 8/1988 | Lipsztajn | |
| 4,806,215 | A | 2/1989 | Twardowski | |
| 4,853,096 | A | 8/1989 | Lipsztajn et al. | |
| 5,008,096 | A | 4/1991 | Ringo | |
| 5,041,196 | A | 8/1991 | Cawlfield et al. | |
| 5,077,258 | A | 12/1991 | Phillips et al. | |
| 5,078,908 | A | 1/1992 | Ripley et al. | |
| 5,084,149 | A | 1/1992 | Kaczur et al. | |
| 5,092,970 | A | * | 3/1992 | Kaczur et al. .............. 205/556 |
| 5,106,465 | A | * | 4/1992 | Kaczur et al. .............. 205/338 |
| 5,158,658 | A | 10/1992 | Cawlfield et al. | |
| 5,242,552 | A | 9/1993 | Coin et al. | |
| 5,242,553 | A | 9/1993 | Kaczur et al. | |
| 5,248,397 | A | 9/1993 | Cawlfield et al. | |
| 5,264,089 | A | 11/1993 | Kaczur et al. | |
| 5,296,108 | A | 3/1994 | Kaczur et al. | |
| 5,348,659 | A | 9/1994 | Kunz et al. | |
| 5,354,435 | A | 10/1994 | Kaczur et al. | |
| 5,391,533 | A | 2/1995 | Peterson et al. | |
| 5,419,816 | A | 5/1995 | Sampson et al. | |

(Continued)

*Primary Examiner*—Arun S. Phasge
(74) *Attorney, Agent, or Firm*—Cantor Colburn LLP

(57) **ABSTRACT**

An electrolytic process for generating chlorine dioxide. An aqueous feed stream of an alkali metal chlorite solution is treated with chlorine gas or a mixture of hydrogen chloride and hypochlorous acid formed in an anode compartment from, an aqueous alkali metal chloride solution and subsequently electrolyzed to form a chlorine dioxide effluent.

**19 Claims, 4 Drawing Sheets**



— 26 —

*Exhibit 1*

# EXHIBIT 5

(12) **United States Patent**
DiMascio

(10) **Patent No.:** **US 7,241,435 B2**
(45) **Date of Patent:** **Jul. 10, 2007**

(54) **SYSTEM AND PROCESS FOR PRODUCING HALOGEN OXIDES**

(75) Inventor: **Felice DiMascio**, Rocky Hill, CT (US)

(73) Assignee: **Halox Technologies, Inc.**, Bridgeport, CT (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **11/042,287**

(22) Filed: **Jan. 25, 2005**

(65) **Prior Publication Data**

US 2005/0163700 A1    Jul. 28, 2005

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 10/065,259, filed on Sep. 30, 2002, now Pat. No. 6,913,741.

(51) **Int. Cl.**
*C01B 11/02* (2006.01)

(52) **U.S. Cl.** ...................... **423/477**; 423/462; 423/472

(58) **Field of Classification Search** ................ 423/477, 423/472, 475, 462; 252/187.1, 187.21, 187.23
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 2,717,237 A | 9/1955 | Rempel |
| 3,386,915 A | 6/1968 | Butschl et al. |
| 3,684,437 A | 8/1972 | Callerame |
| 3,763,006 A | 10/1973 | Callerame |
| 3,878,072 A | 4/1975 | Cook, Jr. et al. |
| 3,884,777 A | 5/1975 | Harke et al. |
| 3,904,496 A | 9/1975 | Harke et al. |

| | | |
|---|---|---|
| 4,032,452 A | 6/1977 | Davis |
| 4,115,217 A | 9/1978 | Larsson et al. |
| 4,234,446 A | 11/1980 | Ramras |
| 4,250,144 A | 2/1981 | Ratigan |
| 4,308,117 A | 12/1981 | Sweeney |
| 4,362,707 A | 12/1982 | Hardee et al. |
| 4,381,290 A | 4/1983 | Hardee et al. |
| 4,426,263 A | 1/1984 | Hardee et al. |
| 4,432,856 A | 2/1984 | Murakami et al. |
| 4,526,904 A | 7/1985 | Kishida et al. |
| 4,542,008 A | 9/1985 | Capuano et al. |
| 4,632,876 A | 12/1986 | Laird et al. |
| 4,683,039 A | 7/1987 | Twardowski et al. |
| 4,725,390 A | 2/1988 | Laird et al. |
| 4,767,510 A | 8/1988 | Lipsztajn |
| 4,806,215 A | 2/1989 | Twardowski et al. |
| 4,853,096 A | 8/1989 | Lipsztajn et al. |
| 5,008,096 A | 4/1991 | Ringo |
| 5,041,196 A | 8/1991 | Cawlfield et al. |
| 5,077,258 A | 12/1991 | Phillips et al. |
| 5,078,908 A | 1/1992 | Ripley et al. |
| 5,084,149 A | 1/1992 | Kaczur et al. |

(Continued)

OTHER PUBLICATIONS

U.S. Appl. No. 60/613,541, filed Sep. 27, 2004 (19 pgs).

*Primary Examiner*—Ngoc-Yen Nguyen
(74) *Attorney, Agent, or Firm*—Cantor Colburn LLP

(57) **ABSTRACT**

A system and process for oxidizing inorganic or organic species is disclosed. The system and process includes mixing a dilute aqueous alkali metal halite solution with a mixture of protic acids to produce an effluent containing a halous acid; and contacting the effluent containing the halous acid with a catalytic material to produce a halogen oxide.

**13 Claims, 8 Drawing Sheets**



Exhibit 5

**EXHIBIT 6**

*Exhibit*

Page 2 of 17

Filed 07/02/2C

Document 3-2

XR

Case 5:07-cv-005.

EXHBIT "⁄"

| Appli. Filing Date | Serial No. | Title of Invention | Publication No. | Publication Date | Patent No. | Issue Date |
|---|---|---|---|---|---|---|
| | | **INVENTOR: FELICE DIMASCIO** | | | | |
| 9/30/02 | 10/065,259 | SYSTEM AND PROCESS FOR PRODUCING HALOGEN OXIDES | US2004/0071627A1 | 4/15/04 | 6,913,741 B2 | 7/ 5/05 |
| 7/17/02 | 10/514,175 | ELECTROLYTIC PROCESS AND APPARATUS | US2005/0252786 A1 | 11/17/05 | | |
| 8/12/03 | 10/604,712 | ELECTROLYTIC PROCESS FOR GENERATING CHLORINE OXIDE | US2005/0034997 A1 | 2/17/05 | | |
| 10/10/03 | 10/683,056 | SYSTEMS AND METHODS FOR GENERATING CHLORINE DIOXIDE | US2005/0079121 A1 | 4/14/05 | | |
| 2/ 5/04 | 10/773,797 | SYSTEMS AND METHODS FOR GENERATING CHLORINE DIOXIDE | US2005/0079122 A1 | 4/14/05 | | |
| ''/12/04 | 10/986,610 | SYSTEM AND PROCESS FOR PRODUCING HALOGEN OXIDES | US2005/0095192 A1 | 5/ 5/05 | | |
| 1/25/05 | 11/042,287 | SYSTEM AND PROCESS FOR PRODUCING HALOGEN OXIDES | US2005/0163700 A1 | 7/28/05 | | |
| 9/27/06 | 11/235,848 | CATALYST ELEMENTS AND METHODS OF MAKING AND USING | US2006/0068986A1 | 3/30/06 | | |
| 11/ 2/05 | 11/265,032 | CATALYST COMPOSITE AND METHODS OF MAKING AND USING | US2006/0110311A1 | 5/25/06 | | |

- 28 -

| Appli. Filing Date | Serial No. | Title of Invention | Publication No. | Publication Date | Patent No. | Issue Date |
|---|---|---|---|---|---|---|
| 5/ 1/06 | 11/414,936 | CATALYST ELEMENT AND USE THEREOF | US2006/0292059A1 | 12/28/06 | | |
| 6/12/06 | 11/451,208 | PROCESSES FOR PRODUCING AN AQUEOUS SOLUTION CONTAINING CHLORINE DIOXIDE | US2006/0280673A1 | 12/14/06 | | |
| 8/11/06 | 11/502,778 | BIOFILM REDUCTION IN PRESSURE DRIVEN MEMBRANE-BASED WATER TREATMENT SYSTEM | US2007/0034570A1 | 2/15/07 | | |

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of this BRIEF OF THE DWW PARTIES AS TO WHETHER PRIOR DETERMINATION BARS THE CLAIM upon the following attorney of record and the original upon the Clerk of the Court on this 27th day of May, 2008.


David K. Callahan
dcallahan@kirkland.com
Marcus E. Sernel
msernel@kirkland.com
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601-6636
Fax: 312/861-2200

Frank Frisenda

17    BRIEF OF THE DWW PARTIES AS TO WHETHER PRIOR DETERMINATION BARS THE
CLAIM